STATE OF MINNESOTA

IN SUPREME COURT

A25-0541

Scott County                                                          Hudson, C.J.

Tyrel Lamar Patterson,

      Appellant,

vs.                                                          Filed: July 22, 2026
                                        Office of Appellate Courts
State of Minnesota,

      Respondent.

_____

Cathryn Middlebrook, Chief Appellate Public Defender, Saint Paul, Minnesota; and

Charles F. Clippert, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Elisabeth M. Johnson, Assistant Scott County Attorney, Shakopee, Minnesota, for respondent.

_____

S Y L L A B U S

Because the district court made credibility determinations without first holding an evidentiary hearing, the district court abused its discretion in denying appellant's petition to vacate his felony murder conviction under the Act of May 19, 2023, ch. 52, art. 4, § 24, 2023 Minn. Laws 810, 864–68.

Reversed and remanded.

1

OPINION

HUDSON, Chief Justice.

The issue in this appeal is whether the district court abused its discretion when it made credibility determinations without first holding an evidentiary hearing in denying appellant Tyrel Patterson's petition for relief under the Act of May 19, 2023, ch. 52, art. 4, § 24, 2023 Minn. Laws 810, 864–68 (the Act). The Act provides a path to possible relief for individuals convicted of first-degree felony murder under an aiding and abetting theory of liability, if they "show by a preponderance of the evidence that they 'did not cause the death of a human being' and did not 'intentionally aid, advise, hire, counsel, or conspire with or otherwise procure another with the intent to cause the death of a human being.' " *State v. Zielinski*, 32 N.W.3d 847, 858 (Minn. 2026) (quoting the Act, subd. 7(a)).

Following his guilty plea in 2017, Patterson was convicted of first-degree felony murder under an aiding and abetting theory of liability. Six years later, Patterson petitioned the district court to vacate his first-degree felony murder conviction under the Act. The district court denied Patterson's petition because it found—relying upon the State's submission of transcripts and findings in one of Patterson's co-conspirator's trials—that "[Patterson] did in fact cause the death of James Herron" and he was thus not entitled to relief. The district court issued its denial order without first holding an evidentiary hearing. We conclude that in doing so, the district court abused its discretion because its decision was based on an erroneous view of the law: specifically, its belief

2

that it could make credibility determinations without first holding an evidentiary hearing. Accordingly, we reverse and remand to the district court for an evidentiary hearing.

## FACTS

In 2016, Patterson, Derrick Smith, Brandy Jaques, and Jonte Robinson were involved in a burglary and robbery that resulted in the death of James Herron. For his involvement in Herron's death, a grand jury indicted Patterson of, among other counts, two counts of first-degree felony murder in violation of Minn. Stat. § 609.185(a)(3).

On December 27, 2017, Patterson pleaded guilty to one count of first-degree felony murder in violation of Minn. Stat. § 609.185(a)(3). The plea agreement called for the State to dismiss the remaining counts. As part of the factual basis for his guilty plea, Patterson admitted facts that established criminal liability under an aiding and abetting theory in accordance with Minn. Stat. § 609.05 (2016).[1] Although Patterson maintained that he was outside the house when Herron was fatally shot, he admitted that he was involved in the planning and execution of the robbery, and he had robbed one of the individuals in the house of his watch and necklace. When pressed by the State, he further acknowledged that he had been present for at least one of the earlier gunshots. This factual basis was adequate under the law in effect at the time, and the district court accepted Patterson's plea and sentenced him to life in prison with the possibility of release after serving 30 years in prison.

---

[1]     Statutes that have been amended since the relevant time period are cited with a date to the governing statute.

*The Act*

Prior to 2023, for a defendant to be convicted of first-degree felony murder under an aiding and abetting theory of liability, the State was not required to prove that a defendant acted with intent to cause death, only that the death was reasonably foreseeable as a probable consequence of committing the underlying felony. *See* Minn. Stat. § 609.05, subd. 2 (2016) ("expansive liability provision"). In 2023, the Legislature enacted an exception to the expansive liability provision as applied to certain felony murder convictions. Now, a person can be convicted of first-degree felony murder for a death caused by another under Minn. Stat. § 609.185(a)(3) only if "the person intentionally aided, advised, hired, counseled, or conspired with or otherwise procured the other *with the intent to cause the death* of a human being." Minn. Stat. § 609.05, subd. 2a(a) (emphasis added).[2] The Legislature also established a procedural framework for individuals previously convicted of first-degree or second-degree felony murder under an aiding and abetting theory of liability to seek relief from their convictions. *See* the Act.

The procedural framework is a multi-step process which includes a preliminary application, a petition, and a hearing. *See id.*

**The preliminary application**. The applicant must submit a preliminary application to the district court alleging certain facts. *Id.*, subd. 4(a).[3] Specifically, the

---

[2]     The Legislature also created a similar exception for unintentional second-degree felony murder convictions under Minn. Stat. § 609.19, subd. 2(1).

[3]     For the efficient administration of justice, we modified the process under the Act to allow all preliminary applications to be filed in the district court of the county where the conviction was entered rather than to a single district court statewide as directed in

4

application must contain certain identifying and procedural information about the applicant and the applicant's case and "a brief statement … explaining why the applicant is entitled to relief under this section." *Id.*, subd. 4(a)(6).

The district court shall *deny* a preliminary application if it determines that there is not a reasonable probability that the applicant is entitled to relief.[4] *Id.*, subd. 5(h). The Act also enumerates several reasons for which the district court may *summarily deny* a preliminary application. *See id.*, subd. 5(e), (f). The enumerated reasons are an exhaustive list of reasons for which the district court may summarily deny an application. *Zielinski*, 32 N.W.3d at 858.

**The petition**. If the district court determines there is a reasonable probability that the applicant is entitled to relief, the applicant must file a petition to vacate the conviction that contains the information identified in subd. 4(a). The Act, subd. 6(a). The petition may also contain "any other relevant information, including police reports, trial transcripts, and plea transcripts involving the petitioner or any other person investigated for, charged with, or convicted of a crime arising out of the same set of circumstances for which the petitioner was convicted." *Id.* The State is required to file a response, which

---

the Act. *See* In re The Filing of Requests for Relief in Aid and Abet Felony Murder Cases, No. ADM09-8010, Order at 3 (Minn. filed Aug. 18, 2023).

[4] The "reasonable probability standard" requires that a preliminary application "allege facts that would cause a rational person to believe that at an evidentiary hearing, the applicant might be able to prove by a preponderance of the evidence that they neither caused nor intentionally aided, advised, hired, counseled, or conspired with or otherwise procured another with the intent to cause the death of a human being." *Zielinski*, 32 N.W.3d at 858.

may serve as notice of the intent to support the petition or include a statement explaining why the petitioner is not entitled to relief along with any supporting documents. *Id.*, subd. 6(c). The petitioner may file a reply to the response. *Id.*, subd. 6(d).

After receiving the parties' submissions, the district court can take one of three actions: 1) issue an order and schedule the matter for sentencing or resentencing pursuant to subdivision 7 if the State supports the petition; 2) deny the petition if additional information or submissions establish that there is not a reasonable probability that the applicant is entitled to relief and include a memorandum identifying the additional information or submissions and explaining the reasons the court concluded that there is not a reasonable probability that the applicant is entitled to relief; or 3) schedule the matter for a hearing and issue any appropriate order regarding submission of evidence or identification of witnesses. *Id.*, subd. 6(e).

**The hearing**. If a hearing is scheduled under subdivision 6(e)(3), the hearing shall be held in open court and conducted pursuant to Minn. Stat. § 590.04, except that the petitioner must be present at the hearing. *Id.*, subd. 6(f). For cases involving first-degree felony murder convictions, a petitioner is entitled to relief if the petitioner shows by a preponderance of the evidence that: 1) the petitioner did not cause the death of a human being; and 2) the petitioner did not intentionally aid, advise, hire, counsel, or conspire with or otherwise procure another with the intent to cause the death of a human being. *Id.*, subd. 7(a).

If the court determines that the petitioner does not qualify for relief, the court shall issue an order denying the petition. *Id.*, subd. 7(c). If the court determines that the

6

petitioner is entitled to relief, the court shall issue an order vacating the conviction and either resentence the petitioner or "enter a conviction and impose a sentence for any other predicate felony arising out of the course of conduct that served as the factual basis for the conviction vacated by the court." *Id.*

### Patterson's Preliminary Application and Petition

On March 21, 2024, Patterson filed a preliminary application to vacate his first-degree felony murder conviction pursuant to the Act. The district court determined there was a reasonable probability that Patterson was entitled to relief.

On July 25, 2024, Patterson filed a petition to vacate his conviction. Patterson attached his November 29, 2016 complaint and his December 27, 2017 plea transcript to the petition. Subsequently, Patterson's counsel recused himself based on a conflict and new counsel was appointed. On December 2, 2024, Patterson, through his newly appointed counsel, filed another petition to vacate his conviction. Patterson attached his February 23, 2017 indictment and his December 27, 2017 plea transcript to the petition.

In both petitions, Patterson relied on facts established during his guilty plea to argue that he was entitled to relief.[5] During his testimony to establish the factual basis for his guilty plea, Patterson admitted the following facts. On November 23, 2016, Patterson, along with co-defendants Robinson, Smith, and Jaques, went to Herron's house with the

---

[5] It is unclear from the record whether the petition filed by Patterson's second attorney had any effect on the petition and reply filed by Patterson's first attorney. The subsequent petition was not characterized as an amended petition, and Patterson relies on both petitions for his arguments on appeal.

intent to rob him of money, property, and drugs. Patterson was involved in the planning and execution of the robbery. When the co-defendants arrived at the house, they forced their way inside. Patterson and Smith brandished handguns upon entering the house. While inside the house, Patterson robbed one of the individuals in the house of his watch and necklace. At some point, Herron was shot and killed by one of Patterson's co-defendants. Patterson was outside the house when Herron was fatally shot.

In his petition to vacate his conviction, Patterson noted that while there may have been other evidence about who played what role in the offense, he did not address this evidence during his plea hearing. He further noted that the State and the district court were satisfied with the factual basis at the plea hearing. Patterson argued that the statements he made during his testimony to establish the factual basis for his guilty plea proved by a preponderance of the evidence that "he only intended his conduct—entering into the house of a known drug deal[er] and robbing a resident—to aid in the commission of an aggravated robbery." Patterson therefore asked the district court to vacate his conviction for first-degree felony murder and resentence him on the predicate aggravated robbery offense.[6]

### *State's Response*

In the State's response to Patterson's petitions to vacate the conviction, it relied on facts from the trial of Smith, Patterson's accomplice, to oppose Patterson's petition to

---

[6] Patterson did not request an evidentiary hearing, and the Act does not expressly require such a request.

vacate his conviction. The State argued that Smith's trial transcript and the trial judge's findings were relevant information that the district court could rely on in considering Patterson's petition to vacate his conviction.[7]

As pertinent here, the State relied on the following facts to argue that Patterson could not establish by a preponderance of the evidence that he neither caused the death of a human being nor intentionally aided another with the intent to cause the death of a human being. Patterson, Smith, and Jaques were longtime friends and coworkers. In October 2016, Jaques and Smith drove to a house in Prior Lake owned by Herron. After the visit to Herron's house, Smith decided that he was going to rob Herron. In November 2016, Smith and Patterson planned the Herron robbery by text message. On November 18, 2016, Smith arranged to buy a gun from Patterson. On November 22, 2016, Smith and Patterson agreed to commit the robbery that day. That evening, the trio—along with a friend of Patterson, Jonte Robinson—set out to rob Herron. Jaques then drove the four of them in Smith's Buick to Herron's house. Patterson sat in the front passenger seat next to Jaques.

Once they arrived, the four of them forced their way into the house. Smith had a .40-caliber pistol, and Patterson had a .22-caliber pistol. When they entered the house, they gathered four of the seven people present in the living room. While in the house, the intruders questioned, searched, and took items from the people in the living room. One

---

[7]    The State provided citations to Smith's trial transcript and the district court's findings in that case but did not attach those cited documents to its response.

item taken from the occupants was a distinctive pink and black semiautomatic 9-millimeter handgun.

The intruders asked about Herron's whereabouts, and they were informed that he was in the bedroom. After some of the intruders went to Herron's bedroom, those in the living room heard a struggle followed by a gunshot. The intruders then dragged Herron to the living room and forced him to his knees. An intruder began to interrogate Herron and demanded to know where the drugs and money were located in the house. Herron did not answer, so the man told him that he would count down from five, and if Herron did not tell him, then he would shoot Herron in the knee. Herron did not tell him, so the man counted down from five to one, and shot Herron in the knee. Herron begged for the intruders to stop but they continued to interrogate him. The same man told Herron he was going to "blow [his] shit out" if Herron did not tell them what they wanted to know. Herron still did not tell them. The man then began another countdown and when he got to zero, he pulled the trigger and shot Herron in the back of the head. The intruders left the house shortly afterwards and fled the scene in the Buick. The intruders left without Robinson because they could not find him.

A police chase followed, and the police ultimately spun the Buick off the road and into a ditch. Once the Buick stopped, Patterson, Smith, and Jaques fled on foot, but they were captured soon after. Police found Smith's .40-caliber handgun under his knee, and a pink 9-millimeter handgun tucked into Smith's waistband. Police found the .22-caliber handgun used to kill Herron outside the front passenger side door of the Buick, next to where Patterson had been sitting in the car. There were no prints or DNA on the

.22-caliber handgun. Police also found two cell phones belonging to Jaques in the driver's seat. Patterson's cell phone was in the front passenger seat.

### *Patterson's Reply*

Patterson filed a reply to the State's response. In his reply, Patterson argued that the district court could not rely on testimony from a separate case to which Patterson was not a party. Patterson stated that "[a]bsent the presentation of relevant, admissible evidence, the record for this petition should be limited to the evidence in this case, which consists primarily of the factual basis for Petitioner's December 27, 2017, guilty plea.…"

### *Order Denying Petition*

After receiving the parties' submissions, the district court—without holding an evidentiary hearing—issued an order denying Patterson's petition to vacate his conviction on January 14, 2025. The order contained findings of fact and conclusions of law.

In its findings of fact, the district court noted that Patterson "offered his own plea transcript as the sole factual basis" for his petition. The district court also noted that "[t]he State, over [p]etitioner's objection, offered the transcripts and findings in Derrick[] Smith['s] court trial." *Id.* The basis of Patterson's objection was that while the witnesses at Smith's trial were subject to cross examination, the purpose of that trial was to protect Smith's rights and not Patterson's. Because Patterson had no trial, and there was "a dearth of factual record beyond the plea colloquy," the district court took the position that "the Derrick Smith trial transcript provide[d] reliable evidence of the underlying facts."

Although the district court acknowledged that Patterson's plea transcript offered contrary evidence, it found that there was no reasonable probability that Patterson was

11

entitled to relief because it concluded that the evidence strongly pointed to Patterson as

the co-conspirator who directly caused the death of James Herron. The district court

relied on the following facts from Smith's trial:

> The statements of [accomplices] and witnesses place Petitioner in possession of the .22 handgun. The evidence clearly identifies the three wounds suffered by Herron (wrist, knee and head) were all consistent with the use of the .22, and forensic evidence at the scene corroborated the use of that weapon in inflicting the injuries. The .22 was recovered outside the door of the car that Petitioner was deemed to have been sitting in when the three fled on foot from police. Moreover, witnesses and [accomplices] identify Petitioner as the person who was initially in the bedroom with Herron when the first shot was fired, and who then brought Herron to the main living space when the other shots were fired. The other known guns at the scene were a .44 caliber and a 9mm handgun.

Based on these facts, the district court found that Patterson did in fact cause Herron's

death and was therefore not entitled to relief under the Act.

### *Appeal*

Patterson appealed the district court's denial of his petition to vacate his conviction

under the Act to this court.[8]

---

[8]    In Patterson's principal and reply briefs, his sole argument was that the district court erred in denying his petition because it considered matters outside the record of his case. But at oral argument, Patterson cited *Andersen v. State*, 913 N.W.2d 417 (Minn. 2018), for the first time and argued that the district court also erred by making credibility determinations without first holding an evidentiary hearing. After oral argument, we ordered supplemental briefing on whether the rule that a postconviction court must not make credibility determinations without first holding an evidentiary hearing, which is discussed in *Andersen*, applies with equal force to proceedings under the Act. Notwithstanding this issue having been raised for the first time at oral argument, we address it here, given our "responsibility … to decide cases in accordance with [the] law," *see State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990), and because "the interests of justice so require," *see Hegseth v. Am. Fam. Mut. Ins. Grp.*, 877 N.W.2d 191, 196 n.4 (Minn. 2016).

## ANALYSIS

On appeal, we are asked to determine whether the district court properly denied Patterson's petition to vacate his conviction. We hold that the district court abused its discretion by making credibility determinations without holding an evidentiary hearing.[9]

### A.

"A district court's denial of postconviction relief is reviewed for an abuse of discretion." *Green v. State*, 35 N.W.3d 1, 11 (Minn. 2026). We have previously held that this abuse of discretion standard applies to the review of a district court's denial of a preliminary application under the Act. *State v. Griffin*, 24 N.W.3d 247, 254 (Minn. 2025). We have also applied that same standard of review to a district court's decision to deny a petition to vacate a conviction under the Act after an evidentiary hearing. *Green*, 35 N.W.3d at 11. And we have also observed that the standard of review for a district court's denial of a postconviction petition is for an abuse of discretion, regardless of whether the district court denied the petition with or without an evidentiary hearing. *Id.* Accordingly, we conclude that the abuse-of-discretion standard also applies to a district court's denial of a petition to vacate a conviction under the Act without an evidentiary hearing under subdivision 6(e)(2). A district court abuses its discretion when it has "exercised its discretion in an arbitrary or capricious manner, based its ruling on an

---

[9]    Based on this holding, we do not reach the issue of whether the district court abused its discretion by considering matters outside the record in reaching its decision.

13

erroneous view of the law, or made clearly erroneous factual findings." *Rhodes v. State*, 875 N.W.2d 779, 786 (Minn. 2016).

B.

In *Andersen v. State*, 913 N.W.2d 417 (Minn. 2018), we articulated the rule that, in considering a postconviction petition, a district court must not make credibility determinations without first holding an evidentiary hearing. In *Zielinski*, we recently answered the question of whether that rule applies with equal force to proceedings under the Act. 32 N.W.3d at 859. There, we held that "in considering a request for relief under the Act, a district court cannot make credibility determinations without first holding an evidentiary hearing." *Id*. Therefore, if the district court here made a credibility determination in denying Patterson's petition without first holding an evidentiary hearing, it abused its discretion.

The district court's denial of Patterson's petition to vacate his felony murder conviction was based on the finding that "[Patterson] did in fact cause the death of James Herron." Implicit in this finding was a determination that Patterson's allegation in his preliminary application and petition that he was not present for the fatal shot was not credible. This was a material fact in dispute which was not resolved in the proceedings resulting in Patterson's conviction and which had to be resolved to determine the issues raised on the merits of his petition under the Act. Patterson's case is precisely the kind of case which we have held requires an evidentiary hearing. *See State ex rel. Roy v. Tahash*, 152 N.W.2d 301, 305 (Minn. 1967) (holding that "an evidentiary hearing is required whenever material facts are in dispute which have not been resolved in the proceedings

14

resulting in conviction and which must be resolved in order to determine the issues raised on the merits"); *see also Zielinski*, 32 N.W.3d at 860 n.9 (clarifying that "a district court's consideration of the application or petition should not look backwards at earlier proceedings in which the issue of whether the applicant aided with an intent to cause the death of a human being was not litigated"). Without an evidentiary hearing, the district court lacked the means to evaluate the credibility of Patterson or the State's witnesses. *See Zielinski*, 32 N.W.3d at 860. Thus, in denying Patterson's petition to vacate his conviction, the district court erroneously believed the law allowed it to make credibility determinations without first holding an evidentiary hearing.[10]

Accordingly, the district court's denial of Patterson's petition to vacate his felony murder conviction for relief under the Act was an abuse of discretion because it was based on an erroneous view of the law.[11] The appropriate relief under these circumstances is a remand for an evidentiary hearing because we see no basis in the record to deny an evidentiary hearing.

---

[10] While we conclude that the district court erred, we acknowledge that the Act was recently passed and is currently being interpreted by appellate courts on a case-by-case basis, and that the district court did not have the benefit of our decision in *Zielinski* when it issued its decision.

[11] Because we hold that the district court abused its discretion by making a credibility determination without first holding an evidentiary hearing, we need not reach the issue of whether the district court abused its discretion by considering matters outside the record in reaching its decision.

**CONCLUSION**

For the foregoing reasons, we reverse the decision of the district court and remand for an evidentiary hearing.

Reversed and remanded.